Our fourth case for this morning is a matter of Margaret Kempff of the appeal of Brian Farley. Mr. Fink. Good morning. May it please the court, I represent Brian Farley in this objection to discharge under section 727 against debtor Margaret Kempff. I want to turn directly to the errors of law made by the bankruptcy court in ruling on fraudulent intent with respect to the false oaths made, the misrepresentations or the omissions in the debtor's schedules and statement of financial affairs. So you concede that you have an uphill battle at best on the findings of fact of no intent to defraud. That's a fact question. As we set forth in the standard of review, there's the historical facts, there's the legal test to be applied, and that legal test is a de novo standard, and there's the application of law to facts, which is also. Unless it's a constitutional issue, we are deferential on that as well, to the finder of fact. Why, is it a de novo standard? No, it's actually not, unless it's a constitutional question. If it's Fourth Amendment, you know, probable cause to search, or if it's many other things. We had many discussions about this some time back. But in any event, the bankruptcy court, which was the original finder of fact, and then backed up by the district court, finds that these arguments you're making were either beside the point, such as the $3,000 error on the 3,275.35 or 275.35 because it was immaterial, because it wasn't required to be reported, or not made with any kind of intent to defraud. So it's hard for me to see where we attack that. First of all, the $3,000 matter, we'll start there, that was never corrected. If, in fact... But so what, if it didn't have to be reported to begin with? Because it was set forth in the schedules, in this case the Statement of Financial Affairs, that was sworn to be true under penalty of perjury. There was no exception for the penalty of perjury for something that arguably might not have had to have been included. But you don't think it was a typo, although the bankruptcy court did. If it was a typo and somebody swore to it, do we have that level of strict liability in bankruptcy forms? Once, once... No, answer my question please. If it was a typo, would you say that it was nonetheless fraud? If it wasn't corrected. If it wasn't corrected... Why do you need to correct it if it's a typo that's then discovered to be irrelevant? Well, it's not irrelevant. The debtor has a duty to set forth accurate statements under penalty of perjury. I'm not getting through to you, I don't think... Speaking of accurate statements, counsel, let me ask you about page four of your brief, where you basically put forward your evidence that you had as to whether Mrs. Kempf signed the note in question? She signed the mortgage, not the note. She signed both the note and the mortgage. I thought the district judge found that, or the bankruptcy judge found that she did not, and that was not appealed, was it? That was a finding, Your Honor, that's really not before this court. Exactly. The bankruptcy judge found that this was forgery, right? Not for purposes of Illinois law, though. Well, please, the bankruptcy judge said it was forged, that she didn't sign it. That the husband, whom nobody can trust, but you called and relied upon so heavily, had signed her name to the document, right? I'm trying to understand, since it's not before us, and you didn't appeal that to the district judge or to us, why you're trying to, in essence, taint her with this extra charge, that you didn't appeal? It is, indeed, it was part of the 523 claim, and that is not before this court, it was not appealed. So why are you trying to put that in your brief, to try to give us the impression that she was lying about whether she signed the note or whether her husband signed it for her? Maybe it should not have that particular point. These inaccuracies can happen in the contents of briefs and in the contents of statements made by debtors, with the best of intentions. Let me ask, you also argue in your brief that, in essence, the result of all these discrepancies, and they're there and they're serious, but the result of them is to put the sins of Margaret's lawyers on your client. I'm trying to understand how that happens. I don't understand how your client is any worse off, because her lawyers screwed up. Under Section 727, we do not have to prove harm. The debtor has to accurately set forth in her... Well, let me put it this way. If you don't want to prove or argue harm, how was she better off by any of these mistakes? That also... Or deceptions, if you will. That's an important point in that we do not have to show any motive. We don't have to show... And that's in the Katzmann case. You do have to show materiality. You have to show that the... Well, certainly for 727A4 claims, you had to prove that there was a statement under oath that was false, she knew it was false, she made it with fraudulent intent, and it related materially to the case. The bankruptcy court and the district court find that she did not make it with material... That she did not make it with fraudulent intent, and it was not material anyway. So I don't know why that just throws that whole theory to avoid the discharge out the window. Because the bankruptcy court erred as a matter of law on her materiality finding. Why? Because under both Katzmann and Yonakis, Yonakis says that even if the asset in question is worthless or it's, for whatever reason, unavailable for distribution to the creditors, it still needs to be reported. And the $300,000 judgment, the divorce judgment, that was not reported at all for 10 months... And then it gets put down in the wrong line of the form. I understand she still thinks it's worthless and she doesn't say $300,000 but worthless because I'm collectible. But the bankruptcy court makes the determination that that is not done with fraudulent intent. It may be clumsy, it may be other things, but it's not fraudulent. Not everything that's a mistake is fraud. What the Schedule B, Line 17 said about alimony, maintenance, property settlements, it says that if the debtor is or may be entitled to those items and it also says give particulars. Not every item in Schedule B says give particulars. At no point in this bankruptcy case did the debtor set forth the particulars on that divorce judgment. It simply said 10 months later, after the critical 10 months had already elapsed, they said $0.00 without any further explanation. But look, in the 2004 examinations, and certainly your client was well aware of all of these things. You're the one who's introducing it to the bankruptcy court. It's all there. And so the bankruptcy court makes a determination that A, her way of assessing this wasn't done with fraudulent intent even if it wasn't in full compliance with the rules and that it wasn't material because in fact the value was zero because Mr. Kempf, unless he wins the lottery, as they all said, isn't going to pay or anything. The bankruptcy court applied the wrong legal standard. It is not a common law fraud standard. You do not need to show conscious intent to deceive. Chavin said, simply not caring, being indifferent to getting it right or wrong. Why do you think that's proven by this record? Why do you think the bankruptcy judge and the district court were ignorant of the proper standard? Well, let me say why in the record the standard was satisfied. The debtor knew what was true and then made misstatements or omissions under oath. The debtor knew of the existence of the $300,000 divorce judgment which was merely a year and a half before she filed for bankruptcy. The debtor knew and admitted on the witness stand that she was getting more than $2,000 a month in support from her parents. Well, and that was a misstatement. I mean, I agree with you that that was a problem, although I gather that had she said the correct $4,500, that's still quite substantially below the means test, and thus the bankruptcy court thinks, again, it's not material and thought that there was a reason why she revealed what she did. Respectfully, I disagree with your... That's what the bankruptcy court said. You can't disagree with my... That is what the bankruptcy court said, but materiality as Judge Posner said in the Katzmann case, even if it does not impact the creditors, there's still a need to have these statements and the Statement of Financial Affairs and the schedules accurate. And that's why the bankruptcy court could have found fraudulent intent in this case. But materiality from a more practical standard, that is how did any of these wind up putting more money or assets in Mrs. Kemp's pockets and less money in your clients' pockets also seems highly relevant to me in just evaluating fraudulent intent, which is the standard. But that you're respectfully using the common law standard I'm using the standard of fraudulent intent, not materiality, fraudulent intent, and I'll concede that that would reach reckless indifference to the truth. That's true of securities fraud, for example. But the bankruptcy judge here had to try to look inside Mrs. Kemp's mind and presumably saw a fairly casual approach to some fairly serious matters, but also didn't see any steps unless you can correct me that would put extra money in her pocket and less money in your clients' pockets. What motive? Is that correct? That is what the bankruptcy court found. Is that wrong about whether any of these would change where money wound up? It may or may not change where money ended up. How could it? Don't answer your question. Answer the judge's question, please. Well, on the one point on the $7,200 There are the dividends. We can talk about that. Anything else? Yes. The real impact on the divorce judgment as things now stand if the ex-husband does get some money then arguably Margaret Kemp is going to get it from her ex-husband before Mr. Farley can collect on his state court judgment against the ex-husband. So that has a direct impact. That has to do with the dischargeability, right? Yes, and that's what we're talking about. Understand that's why, perhaps why you're actually continuing to litigate this dry hole but I'm trying to understand how any of these specific issues other than the transfer of the stock dividends would have had any impact on distribution of Mrs. Kemp's bankruptcy estate. On the divorce judgment, for example if we prevail, go back to state court get a judgment You're not tracking with me on this. Forget the question of your attempt to block her discharge. If she's entitled to relief under the bankruptcy code do any of these factual matters other than the stock dividends that the bankruptcy judge found she had nothing to do with put money in her pocket that's taken away from your client? I haven't heard an answer yet. Not immediately. Just only if you can beat the discharge. We do have to beat the discharge. I do want to Which means that she would not have had an incentive to lie about any of these things for purposes of bankruptcy relief. But motive is not I'm going to give you a minute for rebuttal but I'm going to ask you to sit down now and we'll hear from the other side. Sorry. Mr. Lesniak. Yes, your honor. May it please the court, Edward Lesniak from Margaret Kemp. What questions do you have of me? Could you distinguish the Marcus Reitmeyer case for us? Because there are these cases where we have found fraudulent intent as a matter of law. The Marcus Reitmeyer case is kind of an outlier in the sense of what this court really looked at. It was examining the responses to a state court citation proceeding. And that case was decided really on the basis that in that situation the debtor in that situation or the court, the lower courts did not recognize that a citation to discover assets under Illinois law has a continuing effect. And therefore there was an obligation to continue to disclose. That's not the situation here. We didn't have state court proceedings and state court citation proceedings or garnishments that the debtor avoided. And again, in Marcus Reitmeyer there was a conscious effort to avoid disclosing information. Well, there was a reckless disregard or so we said in Marcus Reitmeyer. And I think the question in this case is why, at least taken as a whole, all of these misstatements don't amount to the same kind of insouciance about the bankruptcy forms, not filling them out accurately, taking it upon herself to decide how collectible or not the judgment was in the divorce proceeding. The forms are not that hard to read. I think they're pretty clear as to what they're asking for. No, they're not, Your Honor. And the reckless disregard for the truth really goes to a pattern of misstatements or an accumulation of items that add up to show, to essentially reach the conclusion that there was in fact fraudulent intent. Because you're not going to have those circumstances very often where someone like Ryan Katzman, the borrower, the debtor, comes out and says, I intentionally left somebody off the schedule. So it's just a tool to try to reach the determination, the factual determination, as to what the intent was. So let's look at some of those cumulative items. You have a typographical error. You have a situation where there was an argument about the value of clothing with no evidence introduced. If you're trying to connect the dots, those aren't even dots. There are a couple of things that might be considered dots. Let's look at the divorce decree. She didn't put it down. And the line says put it down. It does say put it down. Now, she wasn't a sophisticated person in terms of business, etc. She had advice of counsel. She did have advice of counsel. And clearly that item was missed. She went back and corrected it. So the bankruptcy court looked at her intention. But didn't put the $300,000 down even when she corrected it, did she? I thought she still listed it as worth zero. And that was what was found to be worth, Your Honor. Worth zero. But the nominal amount of the judgment was $300,000, right? It depends on how much of it would have been available to a bankruptcy judge, even if it had been a valuable asset, because part of it was child support. The point here though is that you shouldn't have to pull teeth like this to get the facts from somebody who's seeking bankruptcy relief. That is absolutely correct, Your Honor. Yes, you shouldn't have to pull teeth. But it's a process done by humans and it's not a perfect process. And that's why the bankruptcy code says you won't get the discharge if you're dishonest, if you're trying to game the system, if you're somebody who's trying to get this benefit and this remedy, but you're not willing to go through all the steps and accurately disclose all the information. That doesn't describe Margaret Kepp. Would you agree I understand you don't think that describes and the bankruptcy court found otherwise or agreed with you, but would you agree that this is enough circumstantial evidence that a bankruptcy judge could find fraudulent intent based on the pattern of mistakes? I would not, Your Honor, again for the reason that to connect the dots, I don't see all the dots. There was a typo, there was no evidence as to the value of her clothing, so those aren't even dots to connect. The divorce decree, yes, that's an item that she should have put out there, but then she corrected it. The divorce decree, the characterization of the money from her parents as a loan, when everybody's saying, oh, it isn't really a loan, it's just a moral obligation, you've got the payment to the Illinois Department of Revenue. Maybe you can talk about those. I'll talk about those, Your Honor. First as to the $1.4 million. Not everybody seems to have agreed that it didn't need to be there. Look closely at the district court's opinion. The district court never even gets to the question of whether there's a false claim. This falls under the false claim of B2 or 4B because the district court said it was appropriate to disclose. Read almost the last line of the district court's decision. The $1.4 million was an accurately disclosed debt. The district court actually felt it was a debt. The district court said there was no evidence it was a gift. Margaret Kemp had actually paid some money to her parents toward that obligation and they had accepted those payments. So not everybody thought that that item didn't need to go down there. So I can certainly understand from a policy point of view, I guess we have two competing policies here. From a policy point of view, you hate to penalize somebody for disclosing too much. You want to kind of say when in doubt, disclose ought to be a good rule. That is a rule, Your Honor. Failing to disclose is another matter altogether. So I think that that's how I would address the $1.4 million. And she also did that at the advice of her lawyer who thought that that could be a creditor. Her parents had also testified in their proceedings that they had never consulted an attorney about this. So this was what they were feeling. But nobody had ever gone to a lawyer and said, is this an enforceable debt? Do I have a claim here for quantum merit or unjust enrichment despite the fact that I never got a note? These were family members who helped each other out and the parents were saying, the parents weren't going to go to court and say, I intend to sue my daughter or I have a claim for my daughter. But the district court, look at what the district court said. The district court actually thought it was a debt and it was appropriate to disclose. Now let's go to the evidence in that case situation. It's crystal clear. First, Margaret had given a security interest in her stock to her uncle. She didn't even think of herself as owning the stock or entitled to the stock anymore. She had no way to pay back the loan. That stock was a goner. She still did have the dividends. And her lawyer wrote, she recognized them, she put them in her schedule. Her lawyer wrote to the Illinois Department of Revenue and said, you cannot collect on this. The monies were held by the accountant. She was never contacted by the accountant as to what to do. It was in fact subject to a levy so when the accountant decided to pay it, it was in fact paid to a creditor who had a secured claim on it. So where has she done anything deceptive in terms of transferring money in violation of the bankruptcy code? The question is, did she lack diligence really in failing to make sure that the company, I gather it's the Steel, is that their name? Steel Investment. Steel Investment. Who took it upon themselves to pay this tax lien, which happens to have been very much in line with the amount of the dividend. I guess that's a coincidence really. No, I think Your Honor it just said there was a levy and whatever the dividend was that's what the accountant held. Okay, fine. But anyway, she didn't, I guess as the nominal owner of the stock, even though it was fully encumbered make sure that the issuing company knew that the bankruptcy court was going to control all distributions. Should have controlled all distributions. That's right, Your Honor. There was no evidence that she contacted the accountant nor did the accountant contact her, but I will say that she already had told the accountant previously that any monies that came out of the dividends were to be paid to her by $1.4 million. So she had actually given previous instructions to the accountant and she really had no thought process to go back and change those instructions, particularly once the levy. That was before, Your Honor. Right, because if it had been after she would have had to have said the automatic stay is in place and don't pay anything. The two payments regarding which one was a typographical error were payments if you look at the lines they were disclosed on there's a reference to the $1.4 million debt and a reference to those two payments that were made to her parents on that debt. I think there might have actually even been one more that was several years earlier where she had said to the accountant, I don't take any dividends on this stock, give them to my father and they had all been paid to her father. Excuse me. This whole discussion suggests to me that there are different inferences that could arise from this record and that suggests that it's a quintessentially factual appeal. Yes, Your Honor. There are inferences and the bankruptcy court had a three day trial and heard all the witnesses and heard Ms. Kemp's explanation. She specifically found her to be credible, her parents to be credible, the accountant to be credible. She made the factual determination and I respectfully suggest that unless this court finds clear error, and certainly the appellant has not demonstrated where that might be, those factual findings should be honored. And there's no question that the bankruptcy judge applied the right legal standard. It's recited in her opinion from the bench that intent to defraud or deceive includes reckless disregard. Yes, she specifically referenced that and then noted that cases from this court require her to still examine the witnesses. She can't just look at what's on the pieces of paper. She needs to look at the witnesses and determine the credibility because intent the intent of the party is crucial here and that's what she needed to determine. So unless this is a very obvious case for a finding of fraudulent intent or intent to deceive then we defer. I asked you the factual finding. Yes, Your Honor. That's correct. If you have no more questions, Your Honors, I'll take a seat and ask you to affirm the decisions below. Thank you. Thank you, Mr. Lesniak. As I said, I will give you one more minute, Mr. Fink. The bankruptcy court blamed the bankruptcy lawyer not the debtor. The bankruptcy court said the debtor didn't have fraudulent intent but came down very hard on the bankruptcy lawyer. The bankruptcy lawyer and the bankruptcy client is responsible for what the bankruptcy lawyer does. The court made it pretty clear that there was no defense based on the lawyer but the as a fact helping one to understand intent, what the lawyer was telling her was a fact that was an acceptable one to look at. That's different from a defense, though. That's how do you prove intent or not. It goes to the reliance on the advice of counsel. I'm actually contradicting you. I'm saying it's not reliance on advice of counsel. The issue is her intent. Different things go into that, whether it's her statements, whether it's circumstances, whether it's what the lawyer was determining. The lawyer's advice is relevant only in so far as it sheds light on her intent. The bankruptcy lawyer did not testify. And in the Katzman case Did you call him? Did you try to call him? No, we did not try to call him. We didn't know this issue was going to come up because he was not listed by the other side as a person having knowledge in this case. And then in the We raised this issue of conversations with the lawyer as a basis for not being liable. So that was a complete surprise to us. And we objected for all that testimony. Okay, well if you'd like to kind of sum up, that would be Well, I did want to respond directly to your point about mixed questions of law and fact. Our subject to de novo review, we put that on page 25 of the opening brief. We will consider this. Thank you very much. Thanks to both counsel. We'll take the case under advisement.